IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

INVICTUS UNLIMITED and
BRIAN EGOLF,

    Plaintiffs,

vs.                                                                                                    No. 1:24-cv-00421-LF-GBW

FEDERAL INSURANCE COMPANY,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for judgment on the pleadings filed by Defendant Federal Insurance Company ("Federal") under Federal Rule of Civil Procedure 12(c). Doc. 28. For the reasons below, the motion is granted in part and denied in part.

## **BACKGROUND**

This is a dispute about whether Federal owed duties to defend and indemnify Plaintiffs Invictus Unlimited ("Invictus") and Brian Egolf against a now-dismissed lawsuit—captioned *Gail "Peaches" Gilbert Revocable Trust v. Egolf*, D-101-cv-2024-00312 (1st Judicial Dist., Santa Fe Cty., N.M.) (the "Underlying Lawsuit")—under two insurance policies. Doc. 1.

Below, the Court describes (A) the Underlying Lawsuit's allegations, (B) the insurance policies' applicable provisions, and (C) this lawsuit's background. In doing so, the Court considers the Underlying Lawsuit's complaint and the relevant insurance policies—attached to Federal's motion for judgment on the pleadings—without treating Federal's motion as a summary judgment motion because the complaint and policies are "central" to Plaintiffs' claims, and the parties "do not dispute the documents' authenticity." *Lucero v. Nationwide Mut. Ins. Co.*,

No. 19-cv-00311-WJ-JMR, 2022 WL 4598482, at *5–6 (D.N.M. Sept. 30, 2022); *see* Doc. 1-2 ¶¶ 7–17, 36–43, 49.

    A.    **The Underlying Lawsuit**

The plaintiffs in the Underlying Lawsuit alleged that, to avoid having to repay a $3.5 million loan, Mr. Egolf and his wife Kelly Egolf engaged in a "fraudulent civil conspiracy" that "render[ed] valueless" the plaintiffs' investments in a company called New Mexico Fresh Foods, LLC ("Fresh Foods"), whose "sole Manager and CEO" was Ms. Egolf.  Doc. 28-1 ¶¶ 16–17.

The alleged fraud began in "2018/2019," when the Egolfs "pressured and induced" the plaintiffs to invest in Fresh Foods with "inaccurate and misleading" financial projections.  *Id.* ¶¶ 11, 14.  Ms. Egolf then "grossly mismanaged" Fresh Foods over the next several years, causing the company to "los[e] money and incur[] increasing amounts of debt" that it could not repay.  *Id.* ¶ 11.  This debt included a $3.5 million loan issued by Wintrust Bank, N.A. ("Wintrust") in August 2020 that was secured by Fresh Foods' assets and "personally guaranteed" by the Egolfs.  *Id.* ¶ 16.

Facing increasing pressure to repay the Wintrust loan, Mr. Egolf and his law firm "organized" Invictus on March 17, 2023, and Mr. Egolf served as the company's "Manager" with the goal of "raising funds" through "new investors" and "obtaining loans to allow Invictus to buy [Fresh Foods'] assets from Wintrust."  *Id.* ¶¶ 19, 23.  While Mr. Egolf surreptitiously carried out this "Invictus scheme" starting in "approximately 2022," Ms. Egolf "lull[ed]" the plaintiffs "into a false sense of security" through "misrepresentations" that "there still was a chance of [Fresh Foods] working out the loan [repayment] with Wintrust."  *Id.* ¶¶ 17, 26–17.

Ultimately, Wintrust "agreed to sell [Fresh Foods'] Assets to Invictus" for around $3 million, and the deal was finalized on "June 14 and 15, 2023," without full disclosure of the

details to the plaintiffs. *Id.* ¶¶ 30, 37. "Thus, the fraud was complete," and the "object of the scheme and civil conspiracy was realized." *Id.* ¶ 41. The Egolfs were "fully released from their personal guarantees to Wintrust," while the plaintiff "los[t] their investments" in Fresh Foods. *Id.* ¶ 32.

The plaintiffs therefore brought the Underlying Lawsuit in New Mexico state court in February 2024. *See* Doc. 28 at 2. In addition to claims against Ms. Egolf and other defendants not relevant here, the plaintiffs brought claims against Mr. Egolf and Invictus for "aiding and abetting [Ms. Egolf's] breaches of fiduciary duties," "constructive fraud," and "civil conspiracy," as well as a "fraudulent tortious concealment" claim against Mr. Egolf. *See* Doc. 28-1 at 19–24.

B.  **The Two Insurance Policies**

***The Invictus Policy.*** Federal issued a liability insurance policy to Invictus for policy period June 14, 2023, to June 14, 2024 (the "Invictus Policy"). Doc. 1-2 ¶¶ 7, 9. The Invictus Policy's "Directors & Officers and Entity Liability" provisions cover Mr. Egolf as an "Insured Person" and Invictus as an "Organization," *id.* ¶¶ 11–13, and place on Federal a "duty to defend" Plaintiffs against covered "Claim[s]," "even if any of the allegations are groundless, false or fraudulent," Doc. 28-2 at 43. Specifically, the Invictus Policy requires Federal to pay "Loss on account of a Claim first made against" Plaintiffs "during the Policy Period." *Id.* at 32. "Claim" means "any … proceeding … against an Insured for a Wrongful Act, commenced by … the service of a civil complaint," and "Loss" means the "amount" that Plaintiffs "become[] legally obligated to pay as a result of any Matter [or Claim], including Defense Costs" and damages. *Id.* at 33, 36–37 ("Matter means any Claim"). "Wrongful Act" means "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed, attempted, or allegedly committed or attempted by" Plaintiffs. *Id.* at 39.

3

The Invictus Policy includes a "Prior Acts Exclusion" barring coverage for any Claim alleging any Wrongful Act that occurred, "in whole or in part," before the policy period began on June 14, 2023:

> In consideration of the premium charged, it is agreed that no coverage will be available under the Directors & Officers and Entity Liability Coverage Part for Loss on account of any Matter based upon, arising from, or in consequence of any Wrongful Act, fact, or circumstance committed, attempted, or allegedly committed or attempted, in whole or in part, prior to June 14, 2023.

*Id.* at 46.

***The Fresh Foods Policy.***  Federal also issued a liability insurance policy to Fresh Foods for policy period December 27, 2022, to April 12, 2024 ("Fresh Foods Policy"). Doc. 1-2 ¶ 36. Like the Invictus Policy, the Fresh Foods Policy has a duty-to-defend provision requiring Federal to "pay, on behalf of an Insured Person, Loss on account of a Claim first made against the Insured Person during the Policy Period." Doc. 28-3 at 29. An "Insured Person" means an "Executive or Employee" of Fresh Foods. *Id.* at 31. But coverage also extends to "Claims for Wrongful Acts of an Insured Person made against … the lawful spouse … of such Insured Person solely by reason of such spouse['s] … status as a spouse." *Id.* at 13.

### C.   This Lawsuit

Plaintiffs timely tendered the Underlying Lawsuit to Federal, with both Invictus and Mr. Egolf seeking coverage under the Invictus Policy, and Mr. Egolf seeking coverage under the Fresh Foods Policy. Federal, however, "disclaimed any duty to defend or indemnify" Plaintiffs under both policies. Doc. 1-2 ¶¶ 22, 34. Plaintiffs thus sued Federal in New Mexico state court in April 2024, seeking a declaratory judgment that "Federal is obligated … to insure, defend, and indemnify [them] for the claims raised" in the Underlying Lawsuit (Count One) and bringing claims for breach of contract (Count Two), bad faith (Count Three), and violations of New Mexico's Trade Practices and Frauds Act ("TPFA") (Count Four). Doc. 1-2.

4

Invoking diversity jurisdiction, Federal removed the case to this Court, Doc. 1; filed an answer to Plaintiffs' complaint, Doc. 5; and moved for judgment on the pleadings, asking the Court to "dismiss this [entire] lawsuit with prejudice," Doc. 28 at 17; *see also* Docs. 29, 32.

In their joint status report and provisional discovery plan, the parties stated that the Underlying Lawsuit was "voluntarily dismissed by the [p]laintiffs in that case on May 15, 2024," and that "[w]hether that or some other action will be renewed is unknown." Doc. 36 at 2. The Court's review of the state court docket confirmed that the Underlying Lawsuit was "voluntarily dismissed without prejudice on May 15, 2024, and that on September 4, 2024, the state court denied a motion to set aside the voluntary dismissal." Doc. 37 at 1.

Accordingly, the Court ordered the parties to file supplemental briefing addressing "whether the Court must dismiss this matter without prejudice for lack of jurisdiction on Article III mootness grounds given that the Underlying Lawsuit was voluntarily dismissed." *Id.* at 2 (collecting duty-to-defend cases dismissed as moot because the underlying litigation was dismissed). The parties filed a joint brief contending that the case is not moot because "Plaintiffs have pleaded damages due to Federal's alleged bad faith failure to defend, as Plaintiffs claim to have incurred attorneys' fees and costs in defending the Underlying Lawsuit after [Federal] denied them a defense." Doc. 38 at 2.

## **ANALYSIS**

For the reasons below, the Court concludes that (1) the question of whether Federal had a duty to defend Plaintiffs against the now-dismissed Underlying Lawsuit is not moot, while the question of Federal's duty to indemnify is moot, and that (2) Federal is entitled to judgment on the pleadings on all four Counts in Plaintiffs' complaint. *See* FED. R. CIV. P. 12(c); *Good v. Dep't of Educ.*, 121 F.4th 772, 786 (10th Cir. 2024) (holding, to resolve a Rule 12(c) motion for

judgment on the pleadings, courts must "accept as true all well-pleaded factual allegations in the complaint, resolve all reasonable inferences in the plaintiff's favor, and ask whether it is plausible that the plaintiff is entitled to relief").

I. **The Question of Whether Federal Had a Duty to Defend Plaintiffs is Not Moot.**

The Court concludes that, while Plaintiffs' claims based on Federal's alleged duty to indemnify are moot, Plaintiffs' claims based on Federal's alleged duty to defend present justiciable questions that this Court has jurisdiction to resolve.

Mootness doctrine is well settled. Article III of the U.S. Constitution "gives federal courts the power to adjudicate only genuine Cases and Controversies," *Robert v. Austin*, 72 F.4th 1160, 1163 (10th Cir. 2023), and courts have an "independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it," *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Claims become moot and must be dismissed without prejudice for lack of subject-matter jurisdiction "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Robert*, 72 F.4th at 1163; *see Calderon v. Moore*, 518 U.S. 149, 150 (1996) ("[F]ederal courts may not give opinions upon moot questions or abstract propositions."); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (holding that "dismissals for lack of jurisdiction should be without prejudice").

In the insurance context, courts have held that claims alleging duties to defend or indemnify can become moot when the underlying litigation has been dismissed. *See, e.g.*, *Nautilus Ins. Co. v. Nevco Waterproofing*, 202 F. App'x 667, 668–69 (5th Cir. 2006) ("Here, the underlying case has been dismissed, rendering the issue of [the insurer's] responsibilities [to defend the insured] moot."); *Hillard v. First Fin. Ins.*, No. 91-6238, 1992 WL 164998, at *1–3 (6th Cir. 1992) (holding that a "voluntary nonsuit in the underlying state court case" meant that

6

"[n]o 'live' controversy between the insured and the insurer then existed" concerning "whether [the insurer] had a duty to defend" the insured); *Acuity v. Exceptional Pros., Inc.*, No. 08-cv-03374-RED, 2010 WL 11508580, at *1–2 (W.D. Mo. Feb. 3, 2010) (dismissing a duty-to-defend action as moot after the parties "dismissed their underlying lawsuit," as "[f]ederal jurisdiction is not created by a previously existing dispute").

Under these principles, the Court concludes that Plaintiffs' claims in Counts One through Four that Federal had a duty to "indemnify" Plaintiffs against any judgment in the now-dismissed Underlying Lawsuit are moot and must be dismissed without prejudice on jurisdictional grounds. *See* Doc. 1-2 ¶¶ 54, 58–64, 67–68, 74, 76–77; *id.* at 14 (*ad damnum* clause, ¶¶ A–C); *Scottsdale Ins. Co. v. Jian Li Structure, Inc.*, No. 18-cv-01744-PKC-SJB, 2020 WL 5622201, at *8 (E.D.N.Y. Aug. 28, 2020) ("Given the dismissal of the Underlying Action … and the absence of a judgment triggering an indemnity obligation, there is no live case or controversy that would entitle [the insured] to a declaratory judgment."). As Plaintiffs concede, "[a]ny duty to indemnify the now-dismissed [Underlying Lawsuit] is moot because there is no judgment or settlement to pay." Doc. 29 at 3; *see Valley Imp. Ass'n, Inc. v. U.S. Fid. & Guar. Corp.*, 129 F.3d 1108, 1126 (10th Cir. 1997) (holding that, under New Mexico law, the "duty to indemnify must be determined based on the facts as ultimately determined in the litigation against the insured" and requires the insurer to "indemnify its insured against any judgment which may result from the claim").

In contrast, Plaintiffs' duty-to-defend claims in Counts One through Four present justiciable questions, even though the Underlying Lawsuit was voluntarily dismissed. Specifically, Plaintiffs allege in Count Three that Federal "breached its duties of good faith and fair dealing by failing to defend" them in the Underlying Lawsuit, causing Plaintiffs to incur

7

attorney's "fees, costs, and other expenses" that they seek to recover in this lawsuit as "compensatory" damages. Doc. 1-2 ¶ 76. These allegations present the threshold question of whether Federal owed Plaintiffs a duty to defend under the Invictus and Fresh Foods Policies—a live question underlying all four Counts of Plaintiffs' complaint that this Court has jurisdiction to resolve under Article III. *See Robert*, 72 F.4th at 1163 (holding that, where the parties have a "legally cognizable interest in the outcome," the case is not moot); *cf., e.g.*, *United Fin. Cas. Co. v. Kansas E3, LLC*, No. 24-cv-05094-CDC, 2024 WL 3345367, at *4 (W.D. Ark. July 9, 2024) (holding that an insurance dispute was not moot because, "though the Underlying Suit has been dismissed, [the insureds] have not withdrawn their request for defense[, and the parties] continue to dispute whether coverage [for the duty to defend] exists"). The Court thus addresses Federal's alleged duty to defend below.

## II. Federal Did Not Owe Plaintiffs a Duty to Defend.

The Court concludes that, under the unambiguous language of the Invictus and Fresh Foods Policies, Federal did not owe a duty to defend Plaintiffs against the Underlying Lawsuit.

The applicable law is well established. Under New Mexico law, "insurance contracts are construed by the same principles which govern the interpretation of all contracts," and when "insurance contracts are unambiguous, courts must construe them in their usual and ordinary sense and enforce them as written." *Chisholm's Vill. Plaza, LLC v. Travelers Com. Ins. Co.*, 621 F. Supp. 3d 1195, 1236 (D.N.M. 2022) (citations and alterations omitted). The question of "[w]hether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy." *Atain Specialty Ins. Co. v. Bobylandia, LLC*, No. 21-cv-01148-JCH-JHR, 2023 WL 2427613, at *2 (D.N.M. Mar. 9, 2023). The insurer is "obligated

8

to defend when the complaint alleges facts potentially within the coverage of the policy." *Id.* Below, the Court applies these principles to both the Invictus and Fresh Foods Policies.

**The Invictus Policy.** Because the Underlying Lawsuit's complaint did not allege facts "potentially within the coverage" of the Invictus Policy's plain language, Federal did not have a duty to defend Plaintiffs under this Policy. *Id.*

At the threshold, Plaintiffs are covered under the Invictus Policy as a general matter (Mr. Egolf is an "Insured Person," and Invictus is an "Organization"), and the Underlying Lawsuit (filed in April 2024) was "first made against" Plaintiffs "during the Policy Period" of June 14, 2023, to June 14, 2024. Doc. 1-2 ¶¶ 7, 9, 11–13; Doc. 28-2 at 32.

The Invictus Policy's Prior Acts Exclusion, however, forecloses any duty to defend in this case. That Exclusion states unambiguously that "no coverage will be available" for Loss stemming from any Claim against Plaintiffs alleging any Wrongful Act that occurred, "*in whole or in part*, prior to June 14, 2023," the Invictus Policy's effective date. Doc. 28-2 at 46 (emphasis added). Enforcing the Exclusion's plain text, the Court concludes that the Wrongful Acts alleged in the Underlying Lawsuit's complaint all occurred, "in whole or in part, prior to June 14, 2023." *Id.* Specifically, the complaint alleges that the conspiracy began as early as "2018/2019," when Mr. Egolf "jointly and in concert with" his wife "pressured and induced" the plaintiffs to invest in Fresh Foods with "inaccurate and misleading" financial projections. Doc. 28-1 ¶¶ 11–12, 14–15. This conduct allegedly continued through "at least early 2023." *Id.* ¶ 11. Likewise, beginning in "approximately August 2022," Mr. Egolf and his law firm purportedly conspired to create Invictus—which was officially "organized" on "March 17, 2023"—to buy Fresh Foods' assets from Wintrust so the Egolfs could escape personal responsibility for the $3.5

million Wintrust loan. *Id.* ¶¶ 19, 23. All of this alleged conduct occurred, "in whole," before June 14, 2023, and thus fits squarely within the Exclusion's plain text. Doc. 28-2 at 46.

Contending that Federal had a duty to defend under the Invictus Policy, Plaintiffs zero in on one allegation in the Underlying Lawsuit's complaint that the Fresh Foods sale was finalized on "June 14 and 15, 2023," during the Invictus Policy's effective period. *Id.* ¶¶ 30, 37; *see* Doc. 29 at 17 (arguing that the Prior Acts Exclusion "does not apply because the [Underlying Lawsuit] alleged that a conversion arose from the sale of … Fresh Foods on June 14 and 15, 2023 – during the Invictus policy period"). But Plaintiffs overlook both the Exclusion's unambiguous language barring coverage for Wrongful Acts that occurred, "in whole *or in part*, prior to June 14, 2023," and specific allegations in the complaint that the sale was negotiated weeks, if not months, before it was finalized on June 14 and 15, 2023. Doc. 28-2 at 46 (emphasis added).

For example, the complaint alleges that the Egolfs "knew" as early as "May 30, 2023," that "Wintrust had agreed to sell the NMFF Assets to Invictus," a "scheme" that "had been underway for months," Doc. 28-1 ¶¶ 30–32, and that a "Stalking Horse Agreement between Invictus and Wintrust, in one form or another, had been pending for weeks, if not for months, and had been fully negotiated and executed before, or by no later than," June 3, 2023, *id.* ¶ 34. Accordingly, while the sale of Fresh Foods' assets to Invictus—the "object of the scheme and civil conspiracy"—was ultimately "realized" during the policy period, *id.* ¶ 41, the overarching scheme occurred, "*in part*, prior to June 14, 2023," Doc. 28-2 at 46 (emphasis added). The Invictus Policy's Prior Acts Exclusion therefore unambiguously forecloses any duty to defend in this case. *See, e.g.*, *Ctr. for Excellence in Higher Educ., Inc. v. RSUI Indem. Co.*, 375 F. Supp. 3d 1217, 1224–27 & n.58 (D. Utah 2019) (holding that a similar "Prior Acts Exclusion" with nearly identical "in whole or in part" language "unambiguously exclude[d] coverage" for an underlying

10

complaint "assert[ing] allegations of fraudulent activity … beginning before and continuing after the exclusion date" (collecting decisions)).

Citing the "mend the hold" doctrine, Plaintiffs contend that Federal cannot rely on the Prior Acts Exclusion's "in part" language in this litigation because Federal relied on only the Exclusion's "in whole" language to deny coverage before this lawsuit was filed. *See* Doc. 29 at 9–13. The Court disagrees. Plaintiffs quote in their complaint, and Federal attaches to its motion for judgment on the pleadings, denial letters demonstrating that Federal relied on the Exclusion's "in part" language before this lawsuit was filed, even if Federal initially relied on the "in whole" language. *See* Doc. 1-2 ¶ 23; Doc. 32-2 at 3–4 (January 7, 2024 denial letter); *Lucero*, 2022 WL 4598482, at *5–6 (documents "central" to the complaint and whose authenticity the parties "do not dispute" can be considered on a motion for judgment on the pleadings). The "mend the hold" doctrine therefore does not apply. *See, e.g.*, *OR&L Constr., L.P. v. Mountain States Mut. Cas. Co.*, 2022-NMCA-035, ¶ 42 ("The mend the hold doctrine precludes an insurer from asserting one reason to deny coverage of a claim and then raising a different reason for denial as a defense *once litigation occurs*." (emphasis added)).

**The Fresh Foods Policy.** Nor did Federal have a duty to defend Mr. Egolf under the Fresh Foods Policy. That Policy covers only an "Insured Person," defined as either (A) an "Executive or Employee" of Fresh Foods or (B) the "lawful spouse" of an Executive or Employee named in the underlying action "solely by reason of such spouse['s] … status as a spouse." Doc. 28-3 at 13, 31.

Mr. Egolf does not fit either category. To start, the Court agrees with Federal, and Mr. Egolf does not dispute, that "[n]owhere" in the Underlying Lawsuit's complaint "is Mr. Egolf described as an executive or employee" of Fresh Foods. Doc. 28 at 15. Likewise, the complaint

repeatedly alleges Mr. Egolf's independent participation in the conspiracy and brings multiple claims against him specifically, apart from his wife, who was an executive at Fresh Foods. *See, e.g.*, Doc. 28-1 ¶¶ 46–48, 55–66 (counts two, four, five, and six naming Mr. Egolf independently). In other words, Mr. Egolf was not a defendant in the Underlying Lawsuit "*solely* by reason" of his "status as [Ms. Egolf's] spouse"—he was a defendant in that lawsuit because the plaintiffs there alleged that he was an independent participant in the conspiracy. Doc. 28-3 at 13 (emphasis added); *id.* (barring coverage for "loss arising from an act, error or omission by an Insured Person's spouse").

Mr. Egolf's sole contrary argument is that paragraph 10 of the Underlying Lawsuit's complaint stated, in relevant part, that "Defendant Kelly Egolf was a member and the sole Manager and CEO of [Fresh Foods]," and "Brian Egolf is Kelly Egolf's husband." Doc. 28-1 ¶ 10. According to Mr. Egolf, "[t]hat paragraph can be read to be attempting to impose liability on [him] by virtue of his status as spouse of an Insured Person." Doc. 29 at 21.

The Court disagrees. Paragraph 10 provided basic background information about the parties and cannot be read in isolation from the rest of the complaint, which goes on extensively to detail Mr. Egolf's independent role in the alleged scheme. *See, e.g.*, Doc. 28-1 ¶¶ 46–48, 55–66 (counts two, four, five, and six naming Mr. Egolf independently). Accordingly, the Court concludes that the Underlying Lawsuit's complaint does not allege facts "potentially within the coverage" of the Fresh Foods Policy, as Mr. Egolf is not an "Insured Person" under the Policy's unambiguous language. *Atain*, 2023 WL 2427613, at *2.

\*   \*   \*

Based on the foregoing analysis, judgment on the pleadings with prejudice is warranted on all four Counts of Plaintiffs' complaint to the extent that those Counts assert a duty to defend.

The Court, first, grants Federal judgment on the pleadings on Counts One (declaratory judgment) and Two (breach of contract), which allege that Federal breached its duty to defend under both the Invictus and Fresh Foods Policies. *See* Doc. 1-2 ¶¶ 57–70; *W. Am. Ins. Co. v. Atyani*, 366 F. Supp. 3d 1270, 1281–82 (D.N.M. 2019) ("As the Court finds as a matter of law that the Insurers have no duty to defend … it follows that the Insurers did not breach their contract … by declining to defend ….").

Likewise, the Court grants Federal judgment on the pleadings on Counts Three (bad faith) and Four (TPFA) because they are derivative of Counts One and Two. *See id.* ¶¶ 71–82. Plaintiffs admit that their bad-faith claim turns on whether "Federal's [alleged] failure to defend was unjustified," Doc. 29 at 22–23, and New Mexico law holds that an insurer "cannot be held liable to its insured for bad faith" where, as here, the insurer "correctly concluded that the Policy did not afford coverage," *Allstate Ins. Co. v. Ford Motor Credit Co.*, No. 04-cv-01285-MCA-WPL, 2006 WL 8444371, at *4 (D.N.M. Mar. 7, 2006) (citing *Charter Servs., Inc. v. Principal Mut. Life Ins. Co.*, 1994-NMCA-007, ¶ 20)). Similarly, "extra-contractual claims" for TPFA violations "fail" where, as here, "there was no coverage under the policy." *Barey v. Rice Ins. Servs. Co., LLC*, No. 14-cv-00371-JCH-GBW, 2016 WL 3638527, at *4, *10 (D.N.M. Mar. 31, 2016).

Finally, the Court declines Plaintiffs' request for leave "to amend their complaint." Doc. 29 at 24. The duty-to-defend analysis "is contingent upon a limited set of facts contained within the four corners" of the Underlying Lawsuit's complaint and the Invictus and Fresh Foods Policies. *Republic Franklin Ins. Co. v. Ebensburg Ins. Agency*, 542 F. Supp. 3d 315, 327 (M.D. Pa. 2021); *see Atain*, 2023 WL 2427613, at *2 (holding that the question "[w]hether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the

insurance policy"). "Because these facts cannot be supplemented, and because they have been duly analyzed by this Court, any amendment" to Plaintiffs' duty-to-defend claims "would be futile." *Republic Franklin Ins. Co.*, 542 F. Supp. 3d at 327.

## **CONCLUSION**

For the reasons above, Federal's Rule 12(c) motion for judgment on the pleadings (Doc. 28) is granted in part and denied in part. The motion is granted in part in that Plaintiffs' duty-to-defend claims in Counts One through Four are dismissed on the merits with prejudice. The motion is denied in part in that Plaintiffs' duty-to-indemnify claims in Counts One through Four are dismissed without prejudice as moot. The Court will enter final judgment in a separate order.

IT IS SO ORDERED.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent